UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| J.H. GROUP, LLC.  d/b/a/, OCEAN ROLLING: CHAIRS, JOHN TAIMANGLO, and STEPHANIE TAIMANGLO, | : | Hon. Joseph H. Rodriguez |
| Plaintiff(s), | : | Civil Action No. 11-1595 |
| v. | : | |
| ROYAL ROLLING CHAIRS, LLC., WILLIAM BOLAND, GARY HILL, JOHN SCHULTZ, CITY OF ATLANTIC CITY, JOHN DOE(S) A-K, AND Jane DOES(S) A-K, being present and former councilpersons, courtesy of ATLANTIC CITY and other persons known or unknown on behalf of ATLANTIC CITY with regard to any and all control, supervisor, monitoring the rolling chair business on behalf of ATLANTIC CITY, THEODORE GARRY, | : : : : : : | **OPINION** |
| Defendant(s). | : | |

This matter comes before the Court on motion to dismiss filed by Defendant City of Atlantic City [10].

## I. Background

Plaintiffs filed the complaint in this matter on March 22, 2011, alleging violations of their Fifth and Fourteenth Amendment rights guaranteed under the United States Constitution, pursuant to 42 U.S.C. § 1983. Plaintiffs are J.H. Group, LLC, doing business as Ocean Rolling Chairs, as well as John Taimanglo and Stephanie Taimanglo, the sole stockholders and members of Ocean Rolling Chairs. (Comp., ¶¶ 1, 2.) Defendants include Royal Rolling Chairs, LLC, William Boland, Gary Hill, John Schultz, City of Atlantic City, John Doe(s) and Jane Doe(s) A-K (being present and former

1

councilpersons, courtesy of Atlantic City and other persons known or unknown on behalf of Atlantic City with regard to any and all control, supervisor, monitoring the rolling chair business on behalf of Atlantic City), and Theodore Gary. (Comp.) Plaintiffs allege that defendant Royal Rolling Chairs (amongst other named defendants) and its owners have used their political connections in the City Council of Atlantic City to conspire against Ocean Rolling Chairs in an effort to destroy their business. (Comp., ¶ 28.)

Plaintiffs John and Stephanie Taimanglo own and operate Ocean Rolling Chairs, a local business in Atlantic City which leases rolling chairs on the boardwalk to independent operators on a daily or weekly basis. (Comp., ¶ 15.) Defendant Royal Rolling Chairs, LLC, is a similar business in Atlantic City and is considered to be a competitor with Ocean Rolling Chairs. (Comp., ¶ 3.) These types of businesses are regulated by local ordinances which allow for inspections and enforcement by supervisors of the Mercantile Division of the City of Atlantic City. (Comp., ¶ 16.) Royal Rolling Chairs is owned in equal one-third parts by manager William Boland, operating manager Theodore Garry, and Gary Hill. (Comp., ¶¶ 4, 5, 6.) Plaintiffs claim that "Gary Hill appears to be 1/3 owner of Royal Rolling Chairs, but is only the alter ego of John Schultz and acts on Schultz's behalf in accordance with directions from Schultz." (Comp., ¶ 22.)

Plaintiffs allege that Theodore Garry "is completely familiar with all of the acts, plans, designs, schemes, and coordination of events with the City of Atlantic City and its agents, servants and employees as well as councilpersons." (Comp., ¶ 23.) Garry is alleged to have participated in the scheme to have John Schultz obtain stock though

2

Gary Hill, and that Shultz further used his power on the City Council in a way that would harm Ocean Rolling Chairs' business. (Comp., ¶¶ 24, 26, 28). This scheme allegedly included various phone conversations regarding Ocean Rolling Chairs, including instructions to employees of Atlantic City to harass and intimidate all of the Plaintiffs. (Comp., ¶ 24).

In 2004, employees of the city allegedly began singling out Ocean Rolling Chairs by harassing its employees on the boardwalk, conducting unnecessary inspections, and engaging in other activities that created problems for the Plaintiffs and adversely affected their income. (Comp., ¶ 28.) "All of this was designed, perpetrated and conducted by the City and Royal Rolling Chairs to deprive the Plaintiffs of their property rights and their rights to conduct their business and use their equipment." Id. Upon being confronted by the Plaintiffs, the city inspectors would state that they "did not know why they were there. We were just told to come and inspect." (Comp., ¶ 29.) Due to these instructions from the City, "Plaintiffs were subjected to conditions and restrictions that were unlawful and not substantiated by the City Ordinances and were treated completely different than the competition at Royal Rolling Chairs, LLC." (Comp., ¶ 31.) An example of this was when Ocean Rolling Chairs was given two days to take its copied licenses off of the chairs and replace them with the real licenses, contrary to past practice where a copy was permissible. (Comp., ¶ 34.) "Complaints were made and Mr. Taimanglo was told that '[h]e did not know the right people.'" Id.

More specifically, Plaintiffs point to resolutions that were passed by the City Council of Atlantic City in 2004 and 2006 regarding the number of chairs each company is legally allowed to own and operate. (Comp., ¶ 39.) Prior to these resolutions being

3

passed, each company was limited to 150 chairs. Id. Following the resolution, Royal

Rolling Chairs was permitted to obtain 41 more chairs, with no notice being given to

Ocean Rolling Chairs. Id. Plaintiffs allege that this rule was passed to favor Royal Rolling

Chairs, and it had been made in defiance of prior resolutions that were aimed to keep

the two companies at the same number of chairs. (Comp., ¶ 40.) Plaintiffs claim this

conduct "has been going on for years and on a weekly, daily and monthly basis." (Comp.,

¶ 44.)

Accordingly, Plaintiffs filed a five-count complaint. Count I alleges a violation of

Plaintiffs' substantive due process rights under 42 U.S.C. § 1983. (Comp., ¶ 44.) Count II

alleges a violation of Plaintiffs' procedural due process rights under 42 U.S.C. § 1983,

due to the Defendant's intent "to remove Plaintiffs and its owners of the property

without proper due process of law." (Comp., ¶ 48.) Count III alleges a violation of

Plaintiffs' equal protection rights under the United States Constitution through 42

U.S.C. § 1983, claiming that "[t]he effect of Defendants' activities has been to cause the

laws and administrative procedures of the City of Atlantic City and the State of New

Jersey to be enforced against only one group or organization(s) / individual(s) in that

the conduct exercises (sic) by the City and its inspectors against Ocean was not equally

exercises (sic) against Royal." (Comp., ¶ 52.) Count IV consists of a civil conspiracy

claim, in that "[t]he Defendants have acted in concert with each other in furtherance of

their efforts to deprive Plaintiffs of their rights of the United States Constitution and to

interfere with Plaintiffs prospective and future contractual relationship and ability to

conduct its business and be profitable." (Comp., ¶ 56.) Count V alleges an interference

with present prospective contractual relationships due to lost business under the

4

Defendants' actions. (Comp., ¶¶ 62, 63.)

In its motion to dismiss, the City of Atlantic City states that the specific incidents referred to in the complaint occurred in 2004 and 2006, over four years before the Plaintiffs sought legal remedies in court. (Def. Br., p. 1.) Therefore, this complaint must be dismissed because the statute of limitations has run out, according to New Jersey state law. (Def. Br., p. 6.) In defending their complaint, Plaintiffs state that the continuing violations doctrine applies, and that their complaint refers to events that occurred within the two year statute of limitations. (Pl. Br., p. 2.)

## II. Standards of Review

### A.  Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move for dismissal of a complaint based on "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When evaluating the plaintiff's claim, courts must accept the plaintiff's well-pleaded factual allegations as true and view the complaint in the light most favorable to the plaintiff. Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).

While the plaintiff need only plead "a short and plain statement of the claim showing that the pleader is entitled to relief," the plaintiff's complaint must nevertheless plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Fed. R. Civ. P. 8(a)(2). Thus, a complaint must allege facts that "raise a right to relief above the speculative level." Id. at 555. The complaint must contain sufficient factual matter to demonstrate that the plaintiff's allegations are not merely possible, but

plausible. <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u>

### B. 42 U.S.C. § 1983

Plaintiff's Constitutional claims are governed by Title 42 U.S.C. § 1983, which provides a civil remedy against any person who, under color of state law, deprives another of rights protected by the United States Constitution. <u>See</u> <u>Collins v. City of Harker Heights</u>, 503 U.S. 115, 120 (1992). Any analysis of 42 U.S.C. § 1983 should begin with the language of the statute:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

<u>See</u> 42 U.S.C. § 1983. As the above language makes clear, Section 1983 is a remedial statute designed to redress deprivations of rights secured by the Constitution and its subordinate federal laws. <u>See</u> <u>Baker v. McCollan</u>, 443 U.S. 137, 145 n.3 (1979). By its own words, therefore, Section 1983 "does not . . . create substantive rights." <u>Kaucher v. County of Bucks</u>, 455 F.3d 418, 423 (3d Cir. 2006) (citing <u>McCollan</u>, 443 U.S. at 145).

To state a cognizable claim under Section 1983, a plaintiff must allege a "deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law." <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 235 (3d Cir. 2008) (citing <u>Kneipp v. Teder</u>, 95 F.3d 1199, 1204 (3d Cir. 1996)). Thus, a plaintiff must demonstrate two essential elements to maintain a claim under §

6

1983: (1) that the plaintiff was deprived of a "right or privileges secured by the Constitution or the laws of the United States" and (2) that plaintiff was deprived of her rights by a person acting under the color of state law. Williams v. Borough of West Chester, Pa, 891 F.2d 458, 464 (3d Cir. 1989).

A municipality is not liable under 42 U.S.C. § 1983 on a respondeat superior theory. Monell v. Dept. Soc. Servs. of New York, 436 U.S. 658, 691 (1978). However, a government entity may be liable for its agent's actions upon a demonstration that a policy or custom of the municipality caused, or was a "moving force" behind, the alleged violation of Plaintiff's rights. Kentucky v. Graham, 473 U.S. 159, 166 (1985) (quoting Polk County v. Dodson, 454 U.S. 312, 326 (1981)); Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996). Thus, in order to prevail against the government entity, "[a] plaintiff must identify the challenged policy, attribute it to the city itself, and show a causal link between execution of the policy and the injury suffered." Losch v. Parkesburg, 736 F.2d 903, 910 (3d Cir. 1984). Further, a plaintiff must show that the municipality acted with "deliberate indifference" to the known policy or custom. Canton v. Harris, 489 U.S. 378. 388 (1989). "A showing of simple or even heightened negligence will not suffice." Board of County Comm'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 407 (1997).

### C. Statute of Limitations and Continuing Violations Doctrine

Defendant Atlantic City claims that the statute of limitations expired on all of the Plaintiffs' claims. In turn, the Plaintiffs claim that because the continuing violations doctrine applies, the claims are timely.

Actions brought pursuant to 42 U.S.C. § 1983 are subject to the statute of

limitations applicable to personal injury claims in the state in which the claim arises. Wallace v. Kato, 549 U.S. 384, 387 (2007); City of Bridgewater Township Police Dep't, 892 F.2d 23, 24 (3d Cir. 1989). Under New Jersey law, a personal injury claim must be brought within two years of the date of accrual. N.J. Stat. Ann. § 2A:14-2. Thus, the statute of limitations for a section 1983 or 1985 claim in New Jersey is two years. Cito, 892 F.2d at 23. Claims arising under New Jersey's State Constitution are also governed by a two year statute of limitations. See Freeman v. State, 788 A.2d 867, 874 (N.J. Super. Ct. App. Div. 2002). So, too, are claims alleging intentional infliction of emotional distress, see Maldonado v. Leeds, 865 A.2d 741, 745 (N.J. Super. Ct. App. Div. 2005) (citing N.J. Stat. Ann. § 2A:14-2), and claims alleging negligence such as negligent hiring or supervision, Lutzky v. Deutsche Bank Nat'l Trust Co., No. 09-cv-3886 (JAP), 2009 WL 3584330, at *4 (D.N.J. Oct. 27, 2009) (citing N.J. Stat. Ann. § 2A:14-2(a)).

"[A] claim accrues in a federal cause of action upon awareness of actual injury, not upon awareness that this injury constitutes a legal wrong." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1386 (3d Cir. 1994); Simone v. Narducci, 262 F. Supp. 2d 381, 387 (D.N.J. 2003) ("The statute of limitations begins to run when the plaintiff knows or reasonably should know of the injury that forms the basis of his action.").

"The continuing violations doctrine is an equitable exception to the timely filing requirement." Cowell v. Palmer Township, 263 F.3d 286, 292 (3d Cir. 2001). In order for this doctrine to apply, a claim is actionable "so long as the last act evidencing the continuing practice falls within the limitation period." Brenner v. Local 514, United Brothers Carpenters and Joiners, 927 F.2d 1283 (3d Cir. 1991). Moreover, the

8

defendant's conduct must involve "more than the occurrence of isolated or sporadic acts." West v. Philadelphia Elec. Co., 45 F.3d 744, 755 (3d Cir. 1995). The Third Circuit's requirements for the continuing violations doctrine to apply are outlined in West:

> The first is subject matter. Do the alleged acts involve the same type of discrimination, tending to connect them in a continuous violation? The second is frequency. Are the alleged acts recurring (e.g., a biweekly paycheck) or more in the   nature of an isolated work assignment or employment decision? The third factor, perhaps of most importance, is degree of permanence. Does the act have the degree of permanence which would trigger an employee's awareness of an duty to assert his or her rights. Or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate? Id. (citing Berry v. Supervisors of Louisiana State University, 715 F.2d 971, 981 (5th Cir. 1983).

The purpose of this doctrine is to address continuing acts, "not continual ill effects from an original violation." Cowell, 263 F.3d at 293 (quoting Ocean Acres Ltd. V. Dare County Bd. Of Health, 707 F.2d 103, 106 (4th Cir. 1983). In short, for the doctrine to apply, there must be some acts that fall before the statutory period, and the last act must occur within the statutory period. The act(s) within the statutory period cannot be sporadic in nature, and the later acts cannot simply be the effects of the original ones.

In New Jersey, common law states that "[f]or causes of action arising under anti-discrimination laws . . . a judicially created doctrine known as the continuing violation theory has developed as an equitable exception to the statute of limitations." Bolinger v. Bell Atl., 330 N.J. Super. 300, 749 A.2d 857, 860 (App. Div. 2000), cert. denied, 165 N.J. 491, 758 A.2d 650 (2000). On both the federal and New Jersey level, "the vast majority of precedent" describing this doctrine is limited to workplace discrimination suits. Speth v. Goode, 2011 U.S. Dist. LEXIS 118928 (D.N.J. 2011). Despite the importance placed on this doctrine in that narrow context, "this has not precluded the

application of the doctrine to other contexts." Cowell, 263 F.3d 286, 292 (3d Cir. 2001).

See also Brenner, 927 F.2d 1283 (applying the doctrine to a claim under the National

Labor Relations Act); Centifanti v. Nix, 865 F.2d 1422 (3d Cir. 1989) (procedural due

process claim under 42 U.S.C. § 1983). Therefore, while the continuing violations

doctrine is most commonly found in the context of employment discrimination there is

no legal precedent suggesting that its application is exclusive to that narrow field of law.

## IV. Analysis

Plaintiffs' Complaint, taking the facts as true, states a claim pursuant to Fed. R.

Civ. P. 12(b)(6).  The claims as plead, while not as specific as could be, suffice as "a short

and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.

Civ. P. 8(a)(2). In addition to identifying specific dates of occurrences that happened

outside the limitations period, Plaintiffs also identify instances of harassment and

conspiracy that occurred "on numerous occasions," and have "been going on for years

and on a weekly, daily, and monthly basis." See Compl. at ¶¶ 29, 30. In addition,

Plaintiffs' identify a period of time "up to the present time" when Theodore Garry

observed some of the complained of behavior.  Id. at ¶¶ 23, 24.  Such language is enough

to raise the level from possibility to plausibility that some of alleged instances happened

within the limitations period. Iqbal, 129 S. Ct. at 1949.

In addition, applying the continuing violations doctrine, the alleged behavior that

falls outside the statute of limitations survives this stage because it is alleged to have

occurred constantly throughout the years.  There is enough in the complaint to suggest

that Plaintiffs' claims are more than just "the continual ill effects of the original

10

violation." <u>Cowell</u>, 263 F.3d at 293.  For the same reasons that Defendant's statute of limitations argument fails at this juncture, so must Defendant's claim that the continuing violations doctrine is inapplicable.  At this stage, Plaintiffs allege "enough facts to state a claim to relief that is plausible on its face" and will be afforded an opportunity to conduct discovery. <u>Twombly</u>, 550 U.S. at 556. Defendant's motion is accordingly denied on this basis.

Finally, the Defendant Atlantic City argues that the Plaintiffs' Fifth Amendment claim must fail as a matter of law because Fifth Amendment claims can only be brought against the federal government.  "The limitations of the fifth amendment restrict only federal government action and not the actions of private entities." <u>Nguyen v. United States Catholic Conference</u>, 719 F.2d 52, 54 (3d Cir. 1983); <u>see also</u> <u>Myers v. County of Somerset</u>, 515 F. Supp. 2d 492 (D. N.J. 2007) ("Accordingly, the rights provided by the Fifth Amendment do not apply to the actions of state officials.").  As a result, Defendant's motion is granted and the Fifth Amendment claim against the City of Atlantic City is dismissed.

## V. Conclusion

For the reasons expressed above, Defendant's motion is granted in part and denied in part.  The Fifth Amendment claim against the City of Atlantic City is dismissed.  An appropriate Order shall issue.

Dated: March 27, 2012

/s/ Joseph H. Rodriguez
Hon. Joseph H. Rodriguez,
UNITED STATES DISTRICT JUDGE

11